**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**STATE FARM MUTUAL AUTOMOBILE**
**INSURANCE COMPANY and STATE**
**FARM FIRE & CASUALTY COMPANY,**

            **Plaintiffs,**

-vs-                                            **Case No. 6:04-cv-1784-Orl-31KRS**

**GREATER CHIROPRACTIC CENTER**
**CORP., MASSAGE FOR LIFE CORP.,**
**SUPERIOR MASSAGE CORP., and**
**FLORIDA TOTAL HEALTHCARE**
**CORP.,**

            **Defendants.**

## ORDER

This case is before the Court on Defendants Greater Chiropractic Center Corp.'s ("GCC"), Massage for Life Corp.'s ("MFL"), Florida Total Healthcare Corp.'s ("FTH"), and Superior Massage Corp.'s ("SM") Motion to Dismiss (Doc. 29) and Plaintiffs State Farm Mutual Automobile Insurance Company's ("State Farm Auto") and State Farm Fire & Casualty Company's ("State Farm Fire") Opposition (Doc. 30) thereto.

**I.    Background**

State Farm Auto and State Farm Fire (collectively, the "Insurers") filed the Complaint (Doc. 1) in this case on allegations that GCC, MFL, FTH, and SM (collectively, the "Providers") each submitted unlawful, or unlawfully submitted, medical treatment claims for reimbursement under person-injury-protection ("PIP") policies the Insurers issued. The Insurers allege that each of the Providers is a corporation organized by Michael and Yesenia Ortiz, and that those

individuals are not licensed health care providers. According to the Insurers, Michael Ortiz operated the Providers in pairs and in concert so as to submit two separate HCFAs[1] for each insured patient they claim to have treated. The Insurers allege that the method used to generate separate HCFAs for each insured patient violates patient disclosure requirements, does not comport with industry guidelines, and circumvents billing terminology guidelines; and further that the Providers failed to keep records sufficient to substantiate the treatment allegedly provided and billed for services that were not rendered or were rendered by a different Provider. According to the Insurers, Michael Ortiz operated GCC and MFL in the foregoing manner between 2001 and 2003, and he later operated FTH and SM in that manner between 2003 and 2004. The Insurers seek a declaratory judgment that, in essence, the Providers' billings are unlawful and such billings need not be paid in the future. The Insurers also seek reimbursement for past billings they paid.

The legal mechanism on which the Insurers base their claims is the interplay between Florida statutory provisions governing the submission and payment of medical bills. The Insurers' theory is that, under Florida statutory law, medical bills must be compiled and submitted in a certain manner to be "lawful," "unlawful" medical bills need not be paid, the Providers' billings were and will continue to be "unlawful," and so the Insurers should receive a declaration to that effect and reimbursement of past billings paid. The Insurers have not joined Michael Ortiz as a defendant, have not claimed that the Providers should be treated as Michael Ortiz's alter egos, nor have the Insurers sought to pierce any of the Providers' corporate veils.

---

[1] "HCFA" is an acronym for the Health Care Financing Administration. The HCFA apparently created standardized forms for healthcare providers to use in submitting medicare and medicaid claims. Although the HCFA changed its name in July 2001 to the Centers for Medicare & Medicaid ("CMS") and now uses forms beginning with the designation CMS- rather than HCFA-, it appears to be ingrained in the healthcare industry to refer to medical reimbursement forms as HCFAs.

As it stands, this case involves two separate corporate plaintiffs suing four separate corporate defendants for separate billings. The following graphs give a party-based representation of disputed billings:[2]

| Billings the Providers Submitted to State Farm Fire | | | | | | |
|---|---|---|---|---|---|---|
| Anonymous Patient | Billing number | Billing Date | Total GCC Billed | Total MFL Billed | Total FTH Billed | Total SM Billed |
| 1 | 59V939756 | 11/1/01 | $7,599.00 | $2,665.00 | $0.00 | $0.00 |
| 2 | 59V948868 | 11/26/01 | $7,781.00 | $2,560.00 | $0.00 | $0.00 |
| 3 | 59Y033944 | 2/4/02 | $5,728.00 | $1,255.00 | $0.00 | $0.00 |
| 4 | 59Y137567 | 7/7/02 | $1,383.00 | $840.00 | $0.00 | $0.00 |
| 5 | 59Y249161 | 11/3/02 | $6,477.89 | $2,900.00 | $0.00 | $0.00 |
| 6 | 59Y278489 | 12/5/02 | $8,264.89 | $4,350.00 | $0.00 | $0.00 |
| 7 | 59Y336954 | 2/10/02 | $3,939.89 | $3,080.00 | $2,370.00 | $140.00 |
| 8 | 59Y372712 | 3/23/03 | $6,781.89 | $3,935.00 | $0.00 | $0.00 |
| 9 | 59Y720003 | 4/26/04 | $0.00 | $0.00 | $5,842.89 | $3,330.00 |
| 10 | 59Y720003 | 4/26/04 | $0.00 | $0.00 | $3,429.99 | $2,080.00 |
| 11 | 59Y754273 | 6/6/04 | $0.00 | $0.00 | $6,252.89 | $3,235.00 |
| 12 | 59Y907635 | 11/27/04 | $0.00 | $0.00 | $382.89 | $110.00 |
| 13 | 59Y907635 | 11/27/04 | $0.00 | $0.00 | $382.89 | $110.00 |
| 14 | 59Y848049 | 9/22/04 | $0.00 | $0.00 | $6,122.89 | $3,225.00 |
| 15 | 59Y992525 | 3/4/05 | $0.00 | $0.00 | $3,360.78 | $1,960.00 |
| Subtotal of Billings | | | $47,955.56 | $21,585.00 | $28,145.22 | $14,190.00 |

| Billings the Providers Submitted to State Farm Automobile | | | | | | |
|---|---|---|---|---|---|---|
| Anonymous Patient | Billing number | Billing Date | Total GCC Billed | Total MFL Billed | Total FTH Billed | Total SM Billed |
| 1 | 35W896581 | 5/21/02 | $2,572.00 | $740.00 | $0.00 | $0.00 |
| 2 | 59V754217 | 4/7/01 | $8,571.00 | $2,380.00 | $0.00 | $0.00 |
| 3 | 59V926134 | 10/31/01 | $3,650.00 | $855.00 | $0.00 | $0.00 |
| 4 | 59V926856 | 11/1/01 | $5,363.00 | $1,360.00 | $0.00 | $0.00 |
| 5 | 59V931652 | 11/6/01 | $2,555.00 | $765.00 | $0.00 | $0.00 |
| 6 | 59V931652 | 11/6/01 | $5,385.00 | $1,470.00 | $0.00 | $0.00 |

---

[2]The breakdown of figures is taken from an Exhibit (Doc. 34-1) the Insurers filed. Although the Providers generally dispute the amounts, the amounts appear reliable enough to form a good faith estimate of the amount-in-controversy.

| Anonymous Patient | Billing number | Billing Date | Total GCC Billed | Total MFL Billed | Total FTH Billed | Total SM Billed |
|---|---|---|---|---|---|---|
| 7 | 59V942708 | 11/16/01 | $7,890.00 | $2,235.00 | $0.00 | $0.00 |
| 8 | 59Y007709 | 2/22/02 | $5,618.99 | $2,910.00 | $0.00 | $0.00 |
| 9 | 59Y043382 | 3/31/02 | $6,251.00 | $2,180.00 | $0.00 | $0.00 |
| 10 | 59Y043382 | 3/31/02 | $6,721.75 | $2,085.00 | $0.00 | $0.00 |
| 11 | 59Y047614 | 3/2/02 | $5,327.00 | $2,100.00 | $0.00 | $0.00 |
| 12 | 59Y083485 | 5/10/02 | $8,652.00 | $3,865.00 | $0.00 | $0.00 |
| 13 | 59Y151582 | 7/21/02 | $2,495.99 | $800.00 | $0.00 | $0.00 |
| 14 | 59Y290005 | 12/17/02 | $9,163.89 | $4,760.00 | $0.00 | $0.00 |
| 15 | 59Y322432 | 1/24/03 | $8,748.99 | $4,170.00 | $0.00 | $0.00 |
| 16 | 59Y372740 | 3/23/03 | $1,550.00 | $2,100.00 | $7,474.99 | $3,360.00 |
| 17 | 59Y456730 | 6/23/03 | $2,695.89 | $2,660.00 | $3,375.00 | $420.00 |
| 18 | 59Y456730 | 6/23/03 | $3,667.89 | $3,220.00 | $4,325.00 | $1,370.00 |
| 19 | 59Y456730 | 6/23/03 | $4,411.89 | $3,490.00 | $4,309.98 | $1,130.00 |
| 20 | 59Y485868 | 7/14/03 | $4,417.89 | $3,920.00 | $2,485.00 | $0.00 |
| 21 | 59Y664570 | 2/19/04 | $0.00 | $0.00 | $6,697.90 | $2,850.00 |
| 22 | 59Y703110 | 4/6/04 | $0.00 | $0.00 | $7,457.89 | $3,890.00 |
| 23 | 59Y732375 | 5/10/04 | $0.00 | $0.00 | $6,967.89 | $3,410.00 |
| 24 | 59Y789477 | 7/19/04 | $0.00 | $0.00 | $5,065.00 | $2,200.00 |
| 25 | 59Y901258 | 11/19/04 | $0.00 | $0.00 | $4,177.89 | $2,630.00 |
| 26 | 59Y883933 | 9/13/04 | $0.00 | $0.00 | $4,637.89 | $1,790.00 |
| 27 | 59Y883933 | 9/13/04 | $0.00 | $0.00 | $1,400.00 | $670.00 |
| 28 | 59Y906904 | 11/27/04 | $0.00 | $0.00 | $2,005.00 | $995.00 |
| 29 | 59Y937666 | 12/31/04 | $0.00 | $0.00 | $8,197.89 | $4,310.00 |
| 30 | 59Y949642 | 1/21/05 | $0.00 | $0.00 | $3,277.89 | $2,910.00 |
| 31 | 53E509470 | 2/25/05 | $0.00 | $0.00 | $1,952.89 | $1,260.00 |
| 32 | 59Y986847 | 2/26/05 | $0.00 | $0.00 | $902.89 | $420.00 |
| 33 | 59Y993052 | 3/6/05 | $0.00 | $0.00 | $3,032.89 | $2,800.00 |
| 34 | 59Y993052 | 3/6/05 | $0.00 | $0.00 | $0.00 | $2,240.00 |
| 35 | 59Z024156 | 4/8/05 | $0.00 | $0.00 | $205.00 | $420.00 |
| Subtotal of Billings | | | $102,709.17 | $48,065.00 | $77,948.88 | $39,075.00 |

When this case was filed on December 4, 2004, the only plaintiff-versus-defendant combination in which the disputed billings exceeded $75,000 was between State Farm Auto and GCC. Only one other inter-party amount of disputed billings has grown to that magnitude.

**II.     Legal Analysis**

As this case is between private parties and arises purely under Florida law, the only potential jurisdictional basis is diversity jurisdiction under 28 U.S.C. § 1332, which requires *inter alia* that the amount in controversy exceeds $75,000.  In this case, the amount in controversy is the only jurisdictional ingredient that appears potentially to be lacking.[3]  At issue is whether or to what extent the Insurers have properly invoked diversity jurisdiction.

"The district courts of the United States . . . are 'courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute.'" *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 2005 WL 1469477 *5 (2005) (citation omitted).  The law in this regard has historically been strict and unyielding.  *See, e.g., Finley v. United States*, 490 U.S. 545, 556 (1989) (holding that "a grant of jurisdiction over claims involving particular parties does not itself confer jurisdiction over additional claims by or against different parties."); *Zahn v. International Paper Co.*, 414 U.S. 291, 301 (1973) (holding that each plaintiff in a class action must independently meet the amount-in-controversy requirement to remain in a case based on diversity jurisdiction); *Clark v. Paul Gray, Inc.*, 306 U.S. 583 (1939) (holding that every plaintiff must separately satisfy the amount-in-controversy requirement for jurisdiction); *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806) (holding that for diversity jurisdiction each plaintiff in a case must be a citizen of a different state from each defendant).  Congress altered the forgoing law somewhat with the Judicial Improvements Act of 1990, which has been codified as 28 U.S.C. § 1367.

---

[3]The Insurers are both citizens of Illinois, and the Providers are all citizens of Florida.

> Section 1367 provides, in relevant part:
>
> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. *Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties*.
>
> (b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, *the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure*, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, *when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332*.

28 U.S.C. § 1367 (a)-(b) (emphasis added).

In *Exxon Mobil*, 2005 WL 141469477, the Supreme Court recently made clear that section 1367 altered the law on jurisdiction. At issue in *Exxon Mobil* was "whether a diversity case in which the claims of some plaintiffs satisfy the amount-in-controversy requirement, but the claims of other plaintiffs do not, presents a 'civil action of which the district courts have original jurisdiction.'" *Id.* at *9. The Court found that once original jurisdiction is established for a single claim in the complaint, a court has original jurisdiction over a "civil action" within the meaning of section 1367(a); the question then becomes whether a court has a constitutional or statutory basis for exercising supplemental jurisdiction over other claims. *Id.* Section 1367(b) gives exceptions barring the exercise of supplemental jurisdiction over claims against certain parties. *Id.* at *10. The Court concluded, however, that section 1367(b) did not preclude the exercise of supplemental jurisdiction over claims by plaintiffs joined in the civil action according to Federal Rule of Civil

Procedure ("Rule") 20. *Id.* In that regard, the Court relied on Section 1367(b)'s text: "the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule . . . 20 . . . of the Federal Rules of Civil Procedure . . . ." *See id.* The Court read that text as raising a necessary inference that Section 1367(b)'s bar to supplemental jurisdiction in a diversity cases does not apply to plaintiffs joined in a civil action under Rule 20, when (1) at least one plaintiff's claims meet the amount-in-controversy requirement and (2) the only jurisdictional defect presented by the claim of another joined plaintiff is the failure to meet the amount-in-controversy requirement. *Id.*

Rule 20 does not merely apply to plaintiffs, of course. The Rule provides, in relevant part, that:

> [a]ll persons . . . may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

FED. R. CIV. P. 20(a).

Section 1367(b), by its terms, therefore, is clear on another point in light of the Supreme Court's analysis in *Exxon Mobil*. Even if the requirements for diversity jurisdiction are met for a claim against one defendant, the district courts may not exercise supplemental jurisdiction as to claims against different defendants, when such claims do not meet the requisite amount in controversy. 28 U.S.C. § 1367(b); *see Exxon Mobil*, 2005 WL 141469477 at *10. Section 1367 overturned prior case law, for instance, insofar as it barred such jurisdiction over additional defendants in cases under 28 U.S.C. § 1331 – *i.e.*, federal-question cases. *Compare* 28 U.S.C. §

1367(a) *with Finley*, 490 U.S. at 556. In diversity cases, however, section 1367 preserves the prior case law's barrier to jurisdiction over additional defendants. 28 U.S.C. § 1367(b).

To satisfy the amount-in-controversy requirement for diversity jurisdiction, a plaintiff must establish that a good faith estimated value of her claim(s) against a defendant exceeds the statutorily required amount. *See, e.g., Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003). In general, this point will be met, unless it appears to a "legal certainty" that the claim is really for less than the required amount. *Id*. Nevertheless, if jurisdiction is based on a claim for indeterminate damages, the general "legal certainty" test does not control; instead, "the party seeking to invoke federal jurisdiction bears the burden on proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum." *Id*. Any claimed value that cannot be reduced to a monetary standard without unsupported speculation cannot be used to satisfy the jurisdictional minimum. *Id.* at 809; *Ericsson GE Mobile Communic., Inc. v. Motorola Communic. & Elec., Inc.*, 120 F.3d 216, 221-22 (11th Cir. 1997).

In the instant case, application of the foregoing legal requirements shows that this Court has jurisdiction as to only two defendants, GCC and FTH. Up to the last billing in July 2003, GCC had billed State Farm Auto for over $100,000 in claims, which State Farm Auto now disputes. That, along with complete diversity of citizenship, establishes original jurisdiction for State Farm Auto's claim against GCC. And the related claim that State Farm Fire asserts against GCC fits, by all appearances, within this Court's supplemental jurisdiction under section 1367(a) and (b). *See Exxon Mobil*, 2005 WL 141469477 at *10. Furthermore, the Insurers' claims against FTH follow suit because, although the FTH's billings to State Farm Auto were less than $75,000

at the beginning of this case, it would have taken little speculation to see that in time the disputed claim would likely exceed that requisite amount.

The Insurers' claims against MFL and SM are a different story. Neither of the Insurers can meet the amount-in-controversy requirement as to MFL because it ceased billing the Insurers by July 2003 and its billings were substantially less than $75,000. To exercise jurisdiction over MFL would run afoul of section 1367's text and the relevant case law that pre-dated that congressional mandate. 28 U.S.C. § 1367(b); *see Exxon Mobil*, 2005 WL 141469477. In comparison, SM has billed State Farm Auto less than $40,000 and State Farm Fire less than $15,000 in the last two years. It would be unwarranted to speculate that SM might, for instance, roughly double its current billings to State Farm Auto during the life of this proceeding. Accordingly, neither of the Insurers has established that the amount-in-controversy requirement is met as to SM.

**III.   Conclusion**

In sum, jurisdiction is presently lacking over the claims the Insurers pleaded against MFL and SM, but jurisdiction exists over the Insurers' claims against GCC and FTH. It is therefore,

**ORDERED** that the Providers' Motion to Dismiss (Doc. 29) is granted in part and denied in part. The claims against MFL and SM are dismissed for lack of jurisdiction, but the claims against GCC and FTH remain pending.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on June 30, 2005.

Copies furnished to:

Counsel of Record

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE